Mell V. LaFLEUR

v.

**WESTRIDGE CONSULTANTS, INC., d/b/a Ridgewood Retirement Center.**

**No. 1:92–CV–145.**

United States District Court, E.D. Texas, Beaumont Division.

Feb. 24, 1994.

Gaylyn Leon Cooper, Bernsen, Jamail & Goodson, Beaumont, TX, for plaintiff.

Julie A. Richardson and Walter D. Snider, Strong, Pipkin, Nelson & Bissell, Beaumont, TX, for defendant.

## MEMORANDUM OPINION

RADFORD, United States Magistrate Judge.

Mell V. LaFleur ("Plaintiff") filed this lawsuit against her former employer Westridge Consultants, Inc., d/b/a Ridgewood Retirement Center ("Defendant"), alleging that she was subject to disparate treatment because of her race and sex in violation of the Thirteenth Amendment of the United States Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and 42 U.S.C. §§ 1981, 1983.

This matter came before the Court for a non-jury trial on December 6, 1993. The Court makes the following findings of fact and conclusions of law, constituting the decision of this Court regarding the substantive issues only. Any conclusion of law more properly characterized as a finding of fact is adopted as such. Any finding of fact more properly characterized as a conclusion of law is adopted as such. The parties have stipulated that the issue of damages will be tried after the making and signing of these findings of fact and conclusions of law.

## I. FINDINGS OF FACT

1. Plaintiff, Mell V. LaFleur, is an African–American, female, citizen of the United States of America.

2. Defendant, Westridge Consultants, Inc., d/b/a Ridgewood Retirement Center, is an employer engaged in industry affecting commerce and employs more than twenty-five (25) employees for each working day in each of twenty (20) or more calendar weeks in the current year or preceding year. Mr. Doak "Bo" Proctor, a caucasian male, is the President of Westridge Consultants, Inc. Ms. Jimmie Cropper, a caucasian female, is the Director and Manager of the Ridgewood Retirement Center ("the Ridgewood").

3. Plaintiff was originally hired by the Defendant on March 2, 1987 as a housekeeper.

4. Plaintiff was eventually promoted to the position of housekeeping supervisor. Plaintiff occupied this position during the time periods relevant to this lawsuit. As of August 1991, Plaintiff was earning $4.85 per hour as housekeeping supervisor. Plaintiff worked the hours of 7:00 a.m. to 3:30 p.m.

5. From the time Plaintiff began working at the Ridgewood until approximately June 1991, Plaintiff did not experience any incidents upon which her claims in this action are based.

6. Plaintiff became pregnant in the spring of 1991. After Plaintiff's first prenatal visit, she was placed on light duty work by Ms. Jimmie Cropper in accordance with a doctor's recommendation. The other employees in the housekeeping department assumed the Plaintiff's heavier duties, such as mopping and vacuuming. Ms. Cropper was aware that Plaintiff had at least one previous problem pregnancy that had resulted in miscarriage. Although the Defendant had no written policy concerning maternity leave, Plaintiff was told that she would be allowed to work during her pregnancy for as long as her doctor allowed. Plaintiff was also told that after the baby was born, she could take maternity leave and her job would be held until her doctor allowed her to return to work.

7. In June of 1991, Plaintiff was questioned concerning an alleged theft at the Ridgewood. Another Ridgewood employee, Rodney Ellis, had been apprehended trying to cash a check stolen from one of the residents at the Ridgewood. Plaintiff was questioned in the manager's office at the Ridgewood by Mr. Bo Proctor. Mr. Proctor informed Plaintiff that Mr. Ellis had implicated her and another Ridgewood employee in the theft. Mr. Proctor advised Plaintiff that she seek legal advice concerning this matter. Mr. Proctor also questioned the other Ridgewood employee implicated by Mr. Ellis. No legal charges were filed against Mr. Ellis, the Plaintiff, or the other employee. Besides the statements made by Mr. Ellis, no other evidence was found to link the Plaintiff to the alleged theft. Although a notation concerning the incident was placed in Plaintiff's employee file, no disciplinary action was ever taken against Plaintiff.

8. The Court finds that the Defendant's questioning of Plaintiff concerning the allegation of theft in June 1991 was reasonable.

9. On Friday, August 9, 1991, Brenda Howard, a private duty sitter at the Ridgewood, informed Ms. Cropper that a resident's wallet was missing and that Plaintiff had just left his room. Ms. Cropper questioned Plaintiff about the allegation. Plaintiff denied having taken anything from the resident's room. Ms. Cropper also searched Plaintiff's housekeeping cart and the housekeeping office. A pair of men's underwear that were missing from the resident's room were found on Plaintiff's cart. In the housekeeping office, Ms. Cropper found a coin purse in a trash can filled with towels. The

coin purse contained a significant amount of cash and a receipt bearing Plaintiff's name.

10. After a search of the housekeeping office, Ms. Cropper called Plaintiff back into her office. When questioned about the coin purse, Plaintiff insisted that the purse and the money inside belonged to her. Plaintiff again denied any involvement in the alleged theft of the resident's wallet.

11. Later in the day, Ms. Cropper questioned all the other housekeepers concerning the missing wallet. No legal action was taken against any Ridgewood employee, including Plaintiff, in connection with this allegation of theft.

12. The Court finds that the Defendant's questioning of Plaintiff concerning the allegation of theft on August 9, 1991 was reasonable.

13. As a result of the questioning, Plaintiff became very upset. Plaintiff placed her keys and beeper on Ms. Cropper's desk and left the Ridgewood before her shift was over.

14. Later that day, Ms. Cropper instructed Mr. Patrick Godeaux, the limousine driver for the Ridgewood, to return Plaintiff's coin purse and all the money contained in it to the Plaintiff's residence. When Mr. Godeaux handed Plaintiff the coin purse, Plaintiff appeared very upset and told him to "Tell them s.o.b.s that I ain't never going back." Mr. Godeaux returned to the Ridgewood and reported what Plaintiff had said to Ms. Cropper.

15. Over the weekend of August 10 and 11, 1991, Ms. Cropper replaced Plaintiff with Ms. Carol Miller, a caucasian female. Ms. Miller was hired at the rate of $5.00 per hour.

16. On Monday, August 12, 1991, Plaintiff returned to work at the Ridgewood at approximately 7:00 a.m. and proceeded to go about her daily routine. At approximately 9:00 a.m., Ms. Cropper called Plaintiff into her office. Ms. Cropper told Plaintiff that she had assumed that Plaintiff had quit based on her conduct on the previous Friday afternoon and therefore, had hired a replacement for her. Plaintiff denied that she had quit her job on that Friday.

17. The Court finds that Plaintiff did not quit her job on Friday, August 9, 1991. The Court concludes that Plaintiff's actions on that Friday indicate that she was upset or angry, but do not indicate that she had resigned her position. Therefore, Plaintiff was effectively terminated on or about August 12, 1991 when she was informed that she had been replaced and was no longer an employee of the Ridgewood Retirement Center.

## II. CONCLUSIONS OF LAW

The Court has jurisdiction pursuant to Title VII of the Civil Right Act of 1964, 42 U.S.C. §§ 2000e et seq. and 28 U.S.C. §§ 1343(3), (4), 2201 and 2202.

### A. Race Discrimination Claim.

■ 1. A plaintiff's claim alleging discriminatory treatment by her employer based on race under Title VII[1] is analyzed under the following three-step test: (a) the plaintiff must establish a prima facie case of racial discrimination; (b) if the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action; and (c) if the defendant has articulated a legitimate, non-discriminatory reason for its action, the plaintiff must prove by a preponderance of the evidence that the reasons proffered by the defendant are not its true reasons and were merely a pretext for intentional discrimination on account of race. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *citing, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–254, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207 (1981).

---

1. The elements of disparate treatment under Title VII are also applicable to plaintiff's claims under 42 U.S.C. § 1981 and § 1983. *See, Crawford v. Western Elec. Co.,* 614 F.2d 1300, 1315, *reh'g denied,* 620 F.2d 300 (5th Cir.1980) and *St.*

*Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 2746 n. 1, 125 L.Ed.2d 407 (1993). Therefore, all of plaintiff's claims of racial discrimination will be analyzed under Title VII case law.

322

■ 2. *Plaintiff's Prima Facie Case:* A prima facie case of discrimination is established if there is sufficient evidence to permit an inference of race discrimination. In order to establish a prima facie case, Plaintiff must show the following elements:

1. that she belongs to a racial minority;
2. that she was qualified for the job from which she was discharged;
3. that she was discharged; and
4. that the employer filled the position in question with a non-minority person.

*St. Mary's Honor Center v. Hicks,* —— U.S. at ——, 113 S.Ct. at 2747, *Barnes v. Yellow Freight Systems,* 778 F.2d 1096, 1099 (5th Cir.1985) (citations omitted).

In this case, the Court finds by a preponderance of the evidence that Plaintiff has established a prima facie case of race. discrimination by proving that: (1) Plaintiff is an African American; (2) Plaintiff was qualified for the position of housekeeping supervisor; (3) Plaintiff was discharged; and (4) Plaintiff was replaced in her position by a caucasian female.

■ 3. *Burden of Defendant to Articulate a Legitimate Non–Discriminatory Reason:* Once a prima facie case has been established, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. at 254–255, 101 S.Ct. at 1094–1095. This is not a burden of persuasion, but a burden of production. The ulti-

mate burden of persuasion remains at all times with the plaintiff. *St. Mary's Honor Center v. Hicks,* —— U.S. at ——, 113 S.Ct. at 2747.

In this case, Defendant succeeded in carrying its burden of production. Since the Defendant maintained that Plaintiff quit her job and was not fired, Defendant did not "articulate" any non-discriminatory reasons for Plaintiff's termination. However, it is not necessary that Defendant actually stated the reasons that Plaintiff was terminated. It is sufficient, even preferable, that Defendant introduced into evidence a factual basis to support the contention that Plaintiff's termination was not the product of race discrimination.[2] Defendant satisfied its burden of production by producing evidence which tended to show that Plaintiff was not fired for racially motivated reasons. Defendant introduced evidence that Plaintiff had been implicated in two thefts at the Ridgewood in a three month period. Defendant also introduced evidence that Ms. Cropper believed Plaintiff had quit that Friday because Plaintiff left before her shift was over and because of the statement made to Mr. Godeaux, the limousine driver. Since Defendant satisfied its burden of production, the presumption of race discrimination established by Plaintiff's prima facie case dissolves. *Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 957 (5th Cir.1993), *citing Texas Dept. of Community Affairs v. Burdine,* 450 U.S. at 255, n. 10, 101 S.Ct. at 1095, n. 10.

■ 4. *Burden of Plaintiff to Prove that Defendant's Reasons are a Pretext for Intentional Discrimination:* If the defendant succeeds in rebutting the prima facie case, the plaintiff must be afforded a fair opportunity to show that the employer's stated reason for her rejection was in fact pretext. In the recent Supreme Court decision, *St. Mary's Honor Center v. Hicks,* the plaintiff's ultimate burden at this stage in the analysis was clarified.[3] To ultimately pre-

---

**2.** The employer's burden is satisfied by producing evidence of legitimate non-discriminatory reasons. The employer need only produce admissible evidence which would allow the trier of fact to rationally conclude that the employment decision had not been motivated by discriminatory animus. *Texas Dept. of Community Affairs v.*

*Burdine,* 450 U.S. at 256–257, 101 S.Ct. at 1095–1096.

**3.** The Court purported to resolve any discrepancies or contradictory language found in *Burdine*

vail, the plaintiff must prove, through a preponderance of the evidence, that the legitimate reasons offered by the defendant were not its true reasons *and* that unlawful discrimination was the reason for the adverse employment action. *St. Mary's Honor Center v. Hicks,* —— U.S. at ——, 113 S.Ct. at 2751. Therefore, it is not enough to just disbelieve the employer, Plaintiff must prove that Defendant acted with discriminatory intent or motive.

Discriminatory intent is not shown by the fact that the employer terminated the employee because of a mistaken belief about the employee. It has been held in employment discrimination cases such as this that:

> "... for an employer to prevail the Court need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory and that the asserted reason for the discharge is therefore not a mere pretext for discrimination."

*Causey v. K & B, Inc.,* 670 F.Supp. 681, 687 (E.D.La.1987); *see also, Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1256 (5th Cir.1977); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. at 259, 101 S.Ct. at 1096; *Moore v. Sears, Roebuck and Co.,* 683 F.2d 1321, 1323, n. 4 (11th Cir.1982). As stated in *Turner,* "Title VII and § 1981 do not protect against unfair business decisions, only against decisions motivated by unlawful animus." *Turner v. Texas Instruments, Inc.,* 555 F.2d at 1257.

Therefore, it is irrelevant whether Plaintiff was involved in any thefts at the Ridgewood or whether Plaintiff actually quit. The only inquiries the Court needs to make are whether Defendant had a good faith belief that Plaintiff's conduct was unsatisfactory and whether the adverse employment action occurred because of racial discrimination. The Court has found that Defendant acted reasonably and in good faith in questioning Plaintiff about alleged thefts at the Ridgewood.[4] Although the Plaintiff did not actual-

ly quit her job, the Court has found that Defendant had a good faith belief that she had quit based on her conduct of Friday, August 9, 1991. Even if Defendant effectively terminated Plaintiff by hiring a replacement based on a mistaken belief that Plaintiff had quit, Defendant can not be held liable for racial discrimination on this fact alone.

The final and ultimate inquiry to be made by the Court is whether Plaintiff was fired because she was an African–American. Plaintiff must prove that she was deprived of employment when a similarly situated caucasian would not have been or that she received a different severity of punishment than a similarly situated caucasian. *Causey v. K & B, Inc.,* 670 F.Supp. 681 at 687 (citations omitted).

Plaintiff has failed to introduce sufficient evidence to prove that her termination was a result of racial discrimination. Plaintiff did not show that caucasian employees in similar positions had been treated more favorably or had received less punishment for a similar violation. Although Plaintiff did show that she was replaced by a caucasian female who was hired at a rate of $0.15 more an hour, this alone does not prove that she was terminated because of her race.

Plaintiff alleged that the manager of the Ridgewood, Ms. Cropper, had made various derogatory statements concerning the Plaintiff. The Court found these allegations not credible. Even if the Court had found that Ms. Cropper had made derogatory comments about the Plaintiff, the fact that a supervisor does not like an employee personally, does not support a charge of racial discrimination absent racial animus. *Bernard v. Bethlehem Steel Corp.,* 837 F.Supp. 215, 216 (E.D.Tex. 1993), citing *Waggoner v. City of Garland Tex.,* 987 F.2d 1160, 1166 (5th Cir.1993). Moreover, an isolated incidence of racial discrimination, even if established, is not sufficient to establish a pattern or practice of discrimination necessary to support racial intent or motive as to an individual claim. *Causey v. K & B, Inc.,* 670 F.Supp. 681 at 687 (citation omitted).

---

concerning this third step in the Title VII analysis.

4. *See, Causey v. K & B Inc.,* 670 F.Supp. 681 (E.D.La.1987).

Plaintiff failed to introduce any evidence to show Defendant terminated her because of race other than her own subjective beliefs. Plaintiff's subjective, and even genuine, belief that she has been subject to discrimination by her employer is not, by itself, sufficient to support a racial discrimination claim. *Anderson v. HCA Deer Park Hospital,* 834 F.Supp. 183, 190 (S.D.Tex.1993). Therefore, Plaintiff has failed to prove by a preponderance of the evidence that Defendant terminated her because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and 42 U.S.C. §§ 1981, 1983.

## B. Sex Discrimination Claim

1. Plaintiff alleges that Defendant discriminated against her because she was pregnant. Title VII provides that it is unlawful to discharge an individual because of the individual's sex. 42 U.S.C. § 2000e–2(a)(1). The Pregnancy Discrimination Act which amended Title VII in 1978 provides that:

> the terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work....

42 U.S.C. § 2000e(k).

2. Plaintiff's claim under the Pregnancy Discrimination Act can also be analyzed under the disparate treatment analysis applied in other Title VII discrimination cases. *E.E.O.C. v. Ackerman, Hood & McQueen, Inc.,* 956 F.2d 944, 947 (10th Cir. 1992).

3. *Plaintiff's Prima Facie Case:* The Court finds that the Plaintiff established a prima facie case to permit an inference of discrimination because of her pregnancy. Plaintiff proved that (1) she is a member of the protected class; (2) that she was qualified for the job from which she was discharged; (3) that she was discharged; and (4) that the employer filled the position in

question with a non-pregnant person (i.e. not a member of the protected class).

4. *Burden of Defendant to Articulate a Legitimate Non–Discriminatory Reason:* Defendant's burden of production to articulate a non-discriminatory reason for Plaintiff's termination is the same for the pregnancy discrimination claim as it is for the race discrimination claim previously discussed. Without repeating the same analysis, the Court finds that Defendant has satisfied its burden of production and, therefore, the presumption of discrimination is dissolved.

5. *Burden of Plaintiff to Prove that Defendant's Reasons are a Pretext for Intentional Discrimination:* Once Plaintiff's prima facie case is rebutted by Defendant, Plaintiff bears the ultimate burden of proving that Defendant terminated her because she was pregnant. Plaintiff must prove that her employer treats pregnancy less favorably than other medical conditions. *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.,* 462 U.S. 669, 684, 103 S.Ct. 2622, 2631, 77 L.Ed.2d 89 (1983). Plaintiff failed to present any evidence that Defendant treated pregnant employees such as herself less favorably than other employees with comparable medical conditions. Although Defendant did not have a written policy concerning pregnancy or maternity leave, Defendant had made arrangements to accommodate Plaintiff's pregnancy. The Court has found that Plaintiff was placed on light duty work by Ms. Jimmie Cropper in accordance with a doctor's recommendation. Defendant made arrangements to have the other employees in the housekeeping department assume Plaintiff's heavier duties. Plaintiff was told that she would be allowed to work during her pregnancy for as long as her doctor allowed. Furthermore, Plaintiff would be allowed to take maternity leave and then be allowed to return to her job when released by her doctor. Although Plaintiff claimed that Ms. Cropper threatened to take her off the job before her doctor did because she was "getting too big," the Court did not find this testimony to be credible. Therefore, the evidence shows that Plaintiff's pregnancy was not treated less favorably than other medical

conditions. In fact, Defendant made quite adequate arrangements to safeguard Plaintiff's health and that of her unborn child, as well as preserve Plaintiff's job at the Ridgewood. Therefore, Plaintiff has failed to prove by a preponderance of the evidence that Defendant terminated her because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.