**Harry PARIKH, Plaintiff,**

**v.**

**UNITED ARTISTS THEATRE CIRCUIT, INC., Defendant.**

**Civil Action No. 3:93–cv–472WS.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Feb. 15, 1996.

Jack C. Pickett, Kitchens & Ellis, Pascagoula, MS, for plaintiff.

William T. Siler, Jr., Phelps Dunbar, Jackson, MS, William F. Selph, III, Keyes, Danks, Coxwell & Leonard, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

This lawsuit was tried before the court sitting without a jury. Plaintiff Harry Parikh is a resident alien of the United States and is a native of India. The defendant here is the United Artists Theatre Circuit, Inc., the operator of motion picture theatres throughout the State of Mississippi and other states. Defendant employed plaintiff as its Mississippi District Manager, but terminated his employment on August 8, 1991. Plaintiff alleges that defendant's decision to fire him was rooted in discriminatory animus directed at his race (Asian)[1] and national origin prohibited by Title VII of the Civil Rights Act of 1964,[2] Title 42 U.S.C. § 2000e, *et seq.* Plaintiff additionally alleges that defendant's alleged discriminatory conduct supports his state-law claim of intentional infliction of emotional distress. During the course of this five-day trial, this court heard from nine (9) witnesses and reviewed numerous documentary exhibits bearing on the issues. Now, pursuant to Rule 52, Federal Rules of Civil Procedure, this court announces its findings. For the reasons which are explained below, this court holds that plaintiff, who has the burden of persuasion here, has not proved his case by a preponderance of the evidence.

### I. *Parties and Jurisdiction*

■ Plaintiff Harry Parikh is a resident alien of the United States and a native of India. Because of his Indian heritage and national origin, he is entitled to the protective cloak of Title VII of the Civil Rights Act, Title 42 U.S.C. § 2000e, *et seq. Meinecke v. H & R Block of Houston,* 66 F.3d 77 (5th Cir.1995) (Title VII provides that it shall be unlawful employment practice for an employer to ... discharge any individual ... because of such individual's race ... or national origin. Title 42 U.S.C. § 2000e–2(a)(1)). Defendant United Artists Theatre Circuit, Inc., headquartered outside the State of Mississippi operates motion picture theatres throughout the State of Mississippi and other states, employs more than fifteen employees and is an employer engaged in an industry that affects commerce as defined by Title 42 U.S.C. § 2000e(b).[3] This court has jurisdiction over this dispute pursuant to Title 28 U.S.C. § 1343.[4]

1. *See St. Francis College v. Al–Khazraji,* 481 U.S. 604, 609 n. 4, 107 S.Ct. 2022, 2026 n. 4, 95 L.Ed.2d 582 (1987) (commenting on the popular understanding that there are three major human races, Caucasoid, Mongoloid and Negroid); *Chaudhuri v. State of Tennessee,* 886 F.Supp. 1374 (M.D.Tenn.1995) (referring to Title VII plaintiff as an "Asian" from the Republic of India); *Hazra v. National Rx Services, Inc.,* 746 F.Supp. 733 (S.D.Ohio 1990) (referring to Title VII plaintiff being of "Asian" ancestry, originally from India); *Sundaram v. American Flange & Mfg. Co.,* 1994 WL 27889 (N.D.Ill. Jan. 30, 1994) (referring to Title VII plaintiff as an "Asian" who was born in India).

2. Title 42 U.S.C. § 2000e–2(a) provides:
   (a) It shall be an unlawful employment practice for an employer—

   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, or conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; ...

3. Title 42 U.S.C. § 2000e(b) provides:

   The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year,....

4. Title 28 U.S.C. § 1343(a)(3) provides:

## II. *Facts*

Plaintiff, a resident alien of the United States and native of India, was employed with United Artists Theatre Circuit, Inc., ("United Artists") from 1976 until his discharge in 1991. At the time of his discharge, plaintiff served as District Manager over United Artists' Mississippi District with responsibility for overseeing the operation of all Mississippi United Artists' theatres.

In January of 1991, the Mississippi District was moved administratively from the Florida Division to the Southwestern Division of United Artists. As a result of this administrative transfer, plaintiff's immediate superiors became Neal Pinsker, General Manager of the Southwestern Division, and Dennis Daniels, Divisional Vice President. Pinsker and Daniels were based in Dallas, Texas, while plaintiff's central office was located in Jackson, Mississippi, at the Northpark Mall. At the time plaintiff's district was transferred to the Southwestern Division, plaintiff became the only non-caucasian District Manager in the Division and was the only District Manager new to the Division at that time.

According to plaintiff, immediately after the Division transfer, Pinsker and Daniels began a course of conduct toward the plaintiff designed to lead to his eventual termination from United Artists. From the beginning, says plaintiff, United Artists, by and through Pinsker and Daniels, subjected the plaintiff to standards of conduct and performance not required of caucasian District Managers under their charge, nor articulated by any written company policies. For instance, says plaintiff, Pinsker and Daniels denied the plaintiff the necessary personnel to operate effectively his District and denied him the right to hire and fire certain District employees, unlike the caucasian District Managers in the Division.

Plaintiff concludes that he was treated differently from the caucasian District Managers in the Division and that his termination

by the defendant was not occasioned by his conduct or performance, but was a result of the defendant's discriminatory conduct towards him because of his race and national origin. Plaintiff emphasizes that during his fifteen (15) years of employment with United Artists prior to his District's transfer to the Southwestern Division, he had never been suspended, demoted, written up or placed on probation by any of his superiors within the company. So, says plaintiff, the defendant's articulated reasons for his termination were simply a mere pretext for discrimination prohibited by Title VII.

Defendant champions a different perspective of the evidence, a view which, says defendant, demonstrates that its decision to terminate plaintiff was based on sound business reasons unassociated with plaintiff's race or national origin. According to United Artists, plaintiff's managerial performance had deteriorated to a point where United Artists had lost confidence in plaintiff's competence to perform his job.

Defendant chronicles the following episodes leading to plaintiff's discharge. Shortly after the Mississippi District was moved from the Florida Division and assigned to the Southwestern Division, in January, 1991, defendant reprimanded plaintiff because of the alleged uncleanliness and disrepair of several theatres in his District. Later in May, 1991, defendant reprimanded plaintiff regarding the way plaintiff managed the discharge of his secretary and because of alleged inappropriate payroll practices. On July 26, 1991, defendant reprimanded plaintiff for his failure to send in United Artists Excellence in Performance reports.

In July, 1991, plaintiff requested vacation leave for the days of July 24–26, 1991,—a Wednesday, Thursday and Friday. During these days, plaintiff traveled out of his District on personal business. Plaintiff did not return to his District as he had allegedly promised, but, according to defendant, re-

---

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or

immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

mained out of his District without reporting his absence to his supervisors or making arrangements for his District to be supervised in his extended absence. Defendant then reprimanded plaintiff for abandoning his District.

The week following this reprimand from July 30th until August 1st, says defendant, Parikh again left his District for two days without notifying his superiors and without making arrangements for someone to supervise his District in his absence. According to defendant, plaintiff's disregard for his responsibilities caused a serious mishap. One of the theatre managers in plaintiff's district did not open his theatre, leaving customers and employees lining up outside with no one to open the theatre. To remedy the situation, says defendant, another theatre manager had to break in the theatre to get it open for business.

Following plaintiff's return to work on August 1, plaintiff's supervisor, Neal Pinsker, says he ordered plaintiff personally to oversee the weekend operations at the Meadowbrook Theatre in Jackson, Mississippi, which was showing *Boyz And The Hood,* a movie about street gangs. Earlier, says Pinsker, parking lot fights had occurred at the movie site attributable, in Pinsker's opinion, to the movie's controversial topic. Notwithstanding this direct command and the urgency which spawned it, Pinsker testified that plaintiff did not adequately oversee the weekend operations. Instead, says Pinsker, plaintiff merely made one brief stop at the theatre which was hardly adequate to monitor a potentially explosive situation.

The following week, on August 8, 1991, Dennis Daniels and Neal Pinsker discharged the plaintiff for "abandoning his district and failing to follow the instructions of his supervisor." Plaintiff was replaced by David Chaffin, a caucasian born in the United States.

Parikh denies that there was a company policy requiring him to be in his District on weekends and contends that he did not abandon his District on the weekends of July 27, 1991, and August 1, 1991. Further, says plaintiff, indicative of defendant's racial animus towards him are several circumstances:

defendant's failure to discharge a caucasian manager for losing money while disobeying company policy; defendant's failure to discipline a caucasian manager when the manager allegedly violated federal anti-trust law upon discussing ticket prices with an employee of another theatre chain; and defendant's discriminatory conduct in requiring plaintiff to terminate his wife as an employee of defendant's on the grounds that the employment violated company policy, while defendant did not impose this standard upon others. All of these instances, says plaintiff, show that defendant's announced reasons were only pretextual.

As earlier stated, on July 30, 1993, Parikh filed suit alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* saying that the defendant's decision to terminate him was motivated by his Indian heritage and national origin. Finding the contentions of the party to be material issues of disputed fact, this court scheduled this dispute for trial.

### III. *Conclusions of Law*

■ To establish a prima facie case of employment discrimination, an aggrieved party must show that he or she (1) was discharged, (2) was qualified for the position, (3) is a member of a protected class, and (4) was replaced by someone outside the protected class. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). After considering the evidence presented, this court finds that Parikh established a prima facie case of employment discrimination under Title VII.

■ Once a prima facie case has been established, the defendant bears the burden of producing a legitimate, non-discriminatory reason for plaintiff's discharge. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Barrow v. New Orleans S.S. Ass'n,* 10 F.3d 292 (5th Cir.1994); *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955 (5th Cir.1993); *Odom v. Frank,* 3 F.3d 839 (5th Cir.1993).

■ When a defendant articulates a legitimate, non-discriminatory reason for the discharge, the defendant has rebutted plain-

tiff's prima facie case. From this point, to be successful, a plaintiff must produce evidence from which a fact finder could infer that defendant's articulated reasons for plaintiff's termination are not merely pretextual, but also a pretext for the prohibited discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292 (5th Cir.1994); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955 (5th Cir.1993); *Odom v. Frank*, 3 F.3d 839 (5th Cir.1993). Even where the employer's reasons are "unpersuasive, or even obviously contrived," plaintiff must nevertheless prove that the proffered reasons were but a pretext for discrimination. *St. Mary's*, 509 U.S. at 523, 113 S.Ct. at 2756.

■■■ Of course, from the beginning of trial to its conclusion, plaintiff bears the ultimate burden of persuasion by a preponderance of the evidence. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 251–56, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *St. Mary's*, 509 U.S. at 523, 113 S.Ct. at 2756. The shifting proof requirements fostered upon the parties by the *McDonnell Douglas* test are simply evidentiary production burdens well known in all areas of civil law. Unless a litigating party produces competent proof on an issue sufficient to warrant the court's submittance of the issue to a jury, then that party has failed in its proof and the opposing side is entitled to the victory. So, the *McDonnell Douglas* test merely aims to test the evidentiary offerings of the opposing parties to determine if, indeed, the issues presented are in equipoise.

■■■ Plaintiff also has a state-law claim for intentional infliction of emotional distress. Under Mississippi law, a prima facie case against an employer for intentional infliction of emotional distress is established by proof of the following elements: (1) intentional or reckless conduct by a defendant; (2) which was extreme and outrageous; (3) and which caused the plaintiff severe, emotional distress. *First National Bank v. Langley*, 314 So.2d 324 (Miss.1975); *Sears, Roebuck & Co. v. Devers*, 405 So.2d 898 (1981).

As earlier stated, this court finds that plaintiff has failed to carry his burden of persuasion. The court's reasoning is set out in its *Analysis* below.

## IV. *Analysis*

### A. *Others Similarly Situated*

■■■ Evidence that one was treated differently from similarly situated employees may support an inference of employment discrimination. *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251 (5th Cir.1977). However, when relying on comparisons to prove discrimination, plaintiff has the burden to establish that he was discharged for misconduct that was "nearly identical" to that engaged in by a non-minority who was retained. *Hamilton v. Grocers Supply Co., Inc.*, 986 F.2d 97, 99 (5th Cir.1991); *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991); *Smith v. Wal–Mart Stores*, 891 F.2d 1177, 1180 (5th Cir.1990); *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir.1982).

■■■ At trial, plaintiff pointed to several circumstances as evidencing defendant's discriminatory animus: plaintiff's inability to hire his own secretary or maintenance personnel; plaintiff's discipline as compared to that imposed upon others; and the plaintiff's inability to hire his wife as his secretary. This court finds that none of these accusations aids plaintiff's case.

Initially, plaintiff was permitted to hire his choice of secretary without the need for approval from anyone else. He hired Marie Richmond. Problems developed with this relationship and plaintiff eventually discharged her. United Artists was critical of how plaintiff handled the situation. Thereafter, Parikh's supervisor hired plaintiff's next secretary, on the justification that Parikh did not understand what the duties of a District Manager's secretary were. Parikh has shown that other District Managers were allowed to hire their own secretaries, but such a comparison is of little help here in establishing intentional discrimination in his discharge. Whatever can be said about this occurrence, it is not evidence that Parikh's Indian origin played any role in who hired his secretary. Instead, defendant's restriction on plaintiff's hiring discretion appears but a business decision motivated solely by

defendant's conclusion that plaintiff had created problems with the secretary he had been allowed to hire.

The proof also was uncontroverted that plaintiff was not allowed to hire his own maintenance personnel. Parikh's immediate supervisor testified that Parikh's hiring of a maintenance employee was more closely supervised than other District Managers. Parikh did not have a maintenance employee at his theatres, and Parikh was creating a new position and hiring a maintenance employee for the first time. Pinsker testified that he sat in with plaintiff on the interviews in order to share his expertise with plaintiff. According to Pinsker, at the time, plaintiff welcomed his assistance. This court sees nothing in this circumstance as pointing to discriminatory animus.

Plaintiff also compares his own discipline with the discipline given to another District Manager, David Chaffin, who allegedly discussed ticket prices with a rival theatre chain's employees. Parikh's wife testified that she was present during a 1991 telephone conversation between United Artists official Neal Pinsker and District Manager David Chaffin when Chaffin stated he had spoken with a competitor about admission ticket prices. Chaffin was cautioned about such conduct. This court is persuaded that Chaffin's alleged actions were not "nearly identical" to the actions leading to plaintiff's discharge. *Smith v. Wal–Mart Stores,* 891 F.2d 1177 (5th Cir.1990). Even if true, however, Chaffin was only guilty of a single incident of alleged misconduct which the company apparently construed as ignorance of the law. Plaintiff was discharged for a number of problems and repeated incidents of misconduct.

Next, plaintiff charges that defendant discriminatorily enforced its family hiring policy to restrict him from hiring his wife as his secretary. Apparently, plaintiff only now feels the policy enforced was discriminatory since neither he nor his wife threatened or took legal action relative to the situation. Further, the evidence shows that this practice of allowing District Managers to hire their wives as secretaries persisted only in Florida, not in the Southwestern Division supervised by Daniels and Pinsker, who were opposed to husband-wife teams whether in the administrative offices or in the theatres. According to their unchallenged testimony on the point, by the end of 1991, they had phased out all of the other husband-wife teams in the theatres. Pinsker testified that the company disfavored husband-wife teams because of the potential for discord when one team member is fired and because of attendance problems when the team wants to take joint vacations. United Artists' dim view of husband-wife teams was a business decision. Since the defendant was even-handed in its application of its policy, this court perceives no basis for concluding that defendant discriminatorily singled out plaintiff.

## B. *Racial Comments*

Plaintiff's wife testified that she heard United Artists official Dennis Daniels ask whether two employees (in a situation where one employee impregnated another) were black. According to Mrs. Parikh, both employees were white and she considered the question to be both irrelevant and racially motivated. Even assuming Mrs. Parikh's allegation in this regard is true,[5] it sheds no light on whether Mr. Parikh was discharged because of his race or national origin. These comments are merely "stray remarks" and are insufficient to establish discrimination. *See Turner v. North Am. Rubber, Inc.,* 979 F.2d 55, 59 (5th Cir.1992); *Guthrie v. Tifco Indus.,* 941 F.2d 374, 378–79 (5th Cir.1991); *Lo v. F.D.I.C.,* 846 F.Supp. 557, 564 (S.D.Tx. 1994). The comment attributed to Daniels was allegedly made months before plaintiff's discharge, was not related to the plaintiff and

---

**5.** At trial, the plaintiff produced a surprise tape of this telephone conversation. Holding that plaintiff had violated discovery rules in not revealing the existence of the tape, this court prohibited plaintiff's use of such. The tape is marked for identification. Seemingly, on the tape, Daniels does not ask whether the employees are black; rather, he says that he is glad that they are not black. Plaintiff says this tape should have been received by the court to impeach Daniels who denied making any mention of race. Had the court admitted the tape, the court would have considered the tape as bearing on Mrs. Parikh's testimony also, as her account of what was said differs from what was actually said.

did not refer to Parikh's national origin. Moreover, the alleged remarks are too incomplete and unspecific to show that Daniels' inquiry was motivated by some discriminatory animus.

### C. *Justification for Plaintiff's Discharge*

No matter how firmly plaintiff disagrees with the reasons for his discharge, the burden remains with the plaintiff to prove that his discharge was motivated by his Indian heritage. *See Kizer v. Children's Learning Center*, 962 F.2d 608, 612 (7th Cir. 1992) (Title VII plaintiff's subjective belief of racial discrimination no matter how genuine cannot be the sole basis for finding discrimination); *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir.1985) (subjective belief of discrimination not sufficient to establish either age discrimination claim or Title VII claim); *LaFleur v. Westridge Consultants, Inc.*, 844 F.Supp. 318, 324 (E.D.Tex.1994) (subjective belief insufficient to establish Title VII claim of race and sex discrimination), citing *Anderson v. HCA Deer Park Hospital*, 834 F.Supp. 183, 190 (S.D.Tex.1993) (same); *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir.1993) ("[T]estimony by an employee regarding his subjective belief that his termination resulted from age discrimination is insufficient to make an issue for the jury...."); *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 96 (5th Cir.1991) ("An age discrimination plaintiff's own good faith belief that his age motivated his employer's action is of little value."); *Elliott v. Group Med. & Surg. Serv.*, 714 F.2d 556, 567 (5th Cir.1993) ("We are not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief."), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). "[P]laintiff's own good faith belief that his [national origin] motivated [United Artists'] action is of little value." *Hornsby v. Conoco, Inc.*, at 246; *Elliott v. Group Med. & Surg. Serv.*, 714 F.2d 556, 557 (5th Cir.1993), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984); *see also Little v. Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir.1991).

Following a full investigation of Parikh's allegations of discrimination, the EEOC found no reasonable cause to believe that his discharge had been motivated by his national origin. The EEOC letter of determination concluded that in the opinion of the expert investigator at the EEOC, there was no reasonable cause to believe that Harry Parikh had been discriminated against unlawfully.

Acknowledging that he has the ultimate burden of persuasion, plaintiff asserts that notwithstanding the EEOC determination, he has proved his case. This court disagrees and holds that plaintiff has not proved by a preponderance of the evidence that he was a victim of racial or national origin discrimination. The clear evidence shows that:

(1) plaintiff was absent from his District on July 27 and 28, 1991, without reporting his absence to his supervisor;

(2) he was reprimanded verbally and in writing for being out of his District and agreed not to leave his District again without reporting to his supervisor;

(3) the very next week after the reprimand, plaintiff again left his District without notifying his supervisor;

(4) while plaintiff was out of his District on this occasion, problems occurred and plaintiff's supervisor had to get involved to work out the problems. During plaintiff's absence, one of his managers failed to appear to open his theatre and when unable to contact plaintiff, other managers had to break into the theatre to obtain plaintiff's set of keys and open the theatre;

(5) plaintiff failed to obey his supervisor's order to oversee the Meadowbrook theatre over the weekend when *Boyz And The Hood* was showing; and

(6) plaintiff received several reprimands for poor work performance and violations of company policy.

These reasons, if genuine, are certainly sufficient to support discharge of an employee. Pinsker and Daniels testified that previously plaintiff had worked in another District under District Managers not as demanding as Pinsker and Daniels. Pinsker and Daniels testified to their preference for hands-on managers who were reachable and accountable at all times. Plaintiff did not satisfy them. He was out-of-pocket too much for

them and had too many problems with both his personnel and paperwork. Moreover, according to Pinsker, plaintiff disobeyed his direct, explicit command to be at the Meadowbrook theatre over the August 2nd weekend. This court has weighed the credibility of Pinsker and Daniels and is not persuaded that their reasons for discharging plaintiff are other than genuine.

Plaintiff, moreover, essentially agrees that the situations complained of occurred. He does not deny being absent from the District, that he was reprimanded or that his managers had to break into one of his theatres while he was out of town. Plaintiff's retort is that Pinsker and Daniels have simply hidden their discriminatory animus behind these reasons because they either knew plaintiff would be away, or they did not hunt diligently enough for him. Relative to his reprimands for uncleanliness in his theatres and problems with his paperwork, plaintiff charges that these problems also plagued other managers who were not cited.

As earlier stated, this court has gauged the credibility of Pinsker and Daniels and is unpersuaded that they manufactured their reasons to discharge plaintiff. While plaintiff now charges otherwise, the court notes that while the trial record is replete with instances of defendant's complaints directed at plaintiff, the trial record is noticeably absent of any charges by plaintiff that his supervisors' complaints were unfair. In fact, upon accepting discipline, plaintiff appeared to have confessed the accusations. Consider this circumstance in point: when Daniels reprimanded the plaintiff on July 30, 1991, for exceeding his approved leave for the period of July 24–26, plaintiff accepted the reprimand and merely responded "Point Taken." *See* Defendant's Exhibit, D–11.

Even if this court believed Parikh's discharge was unfair or based on bad business judgment, this court may not act as a surrogate personnel director and second-guess management's decisions. Employment discrimination statutes are "not intended to be a vehicle for judicial second-guessing of employment decisions, nor [are they] intended to transform the courts into personnel managers." *Bienkowski v. American Air-*

*lines, Inc.,* 851 F.2d 1503, 1507–08 (5th Cir. 1988); *see also Ray v. Tandem Computers,* 63 F.3d 429 (5th Cir.1995) ("Title VII does not exist to punish poor management skills; rather it exists to eliminate certain types of bias in the workplace."); *Bodenheimer v. P.P.G. Indus., Inc.,* 5 F.3d at 959; *Elliott v. Group Med. & Surg. Serv.,* 714 F.2d at 567.

Based on the foregoing, this court holds that Parikh has failed to show by a preponderance of the evidence that his race or Indian heritage was a motivating factor in United Artists' decision to terminate his employment. Therefore, the court finds in favor of the defendant, United Artists, and against the plaintiff. A separate judgment shall be entered in accordance with the local rules.

**SO ORDERED AND ADJUDGED.**