Kevin R. JENKINS, Plaintiff–Appellant,

v.

STATE OF LOUISIANA, Thru the DEPARTMENT OF CORRECTIONS, et al., Defendants–Appellees.

No. 88–3507.

United States Court of Appeals, Fifth Circuit.

June 7, 1989.

Johnnie A. Jones, Johnnie A. Jones, Jr., Jones & Jones, Baton Rouge, La., for plaintiff-appellant.

Joseph E. Kopsa, Asst. Atty. Gen., William J. Guste, Jr., Atty. Gen., Baton Rouge, La., for defendants-appellees.

Before RUBIN, KING, and GARWOOD, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Kevin R. Jenkins, a black employee, brought a claim of religious and racial discrimination against his former employer. The district court held that Jenkins' treatment was not racially motivated and found that the evidence did not support his claim of religious discrimination. Because the record supports these conclusions, we affirm the judgment.

I.

Jenkins began his employment with the Hunt Correctional Center, a medium securi-ty prison in St. Gabriel, Louisiana, in January, 1979. During his first four months of employment, Jenkins worked at several locations in the prison. In April, 1979, he became a member of the Church of the Seventh Day Adventist. The tenets of this religion forbid members to work between sunset Friday and sunset Saturday. Jenkins testified that he then informed Warden Michael Beauboeuf, in the presence of Major Jerry Cantrell, of his need for Saturdays off to accommodate his religious beliefs. Beauboeuf then transferred Jenkins to the front gate of the prison where he had Fridays and Saturdays off. Approximately one year later his shift was changed but he continued to have Fridays and Saturdays off. In March, 1981, Jenkins resigned to return to school.

On December 4, 1981, Jenkins was rehired by Hunt and assigned to the admitting unit on a regular weekday shift. Jenkins testified that he had contacted Beauboeuf and asked that the warden continue to accommodate his religious beliefs by reassigning him to his old shift. He further testified that Beauboeuf instructed Warden John Whitley to give Jenkins "the shift that he needs." Two weeks later, Whitley sent Jenkins' supervisors a memo stating that Jenkins would be assigned to the admitting unit with Saturdays off, but giving no reasons for the shift assignment.

In January 1983, Whitley, who had replaced Beaubouef, put Captain Edward Anderson in charge of this unit. Anderson assigned the employees to teams consisting of one white officer and one black officer. Jenkins failed to return from lunch on time on April 20, 1983, so Anderson gave him a disciplinary report and written reprimand for this lapse. As a result of the disciplinary report and Anderson's opinion that Jenkins "did not fit into" the unit, Whitley transferred him on May 2 to the "B" team, under Major Raymond McNeil's supervision, at the same salary. Jenkins was replaced by a black officer.

At the "B" team, Jenkins was required to work every other Saturday. Jenkins testified that he discussed his religious beliefs with both Anderson and McNeil but

they refused to accommodate him. Anderson and McNeil denied that they then had any knowledge of Jenkins' religious needs. Sergeant Melvin Long testified that, while he was not aware of the reason that Jenkins wanted to exchange shifts, both he and Jenkins had submitted a written request to McNeil for a shift exchange so that Jenkins would not have to work on Saturdays. McNeil denies that he was informed of any request for an exchange. Over the next three months, Jenkins called in sick every Saturday he was assigned to work, presenting seven fake doctor's excuses to explain his absences. These excuses were written by a dentist who was a member of Jenkins' church.

On July 8, Jenkins filed a charge of religious discrimination against his employers with the Equal Employment Opportunity Commission. On Friday, August 12, Whitley and McNeil interviewed Jenkins regarding his reasons for missing work on Saturdays. Jenkins admitted that he had not been sick but had brought in false excuses because it was against his religion to work on Saturday. Jenkins testified that Whitley and McNeil stated at this meeting that if he did not come to work the next day, a Saturday, he would be fired. Whitley and McNeil testified that they made no such statement. Indeed, later that very day, McNeil issued a disciplinary report to Jenkins containing a recommendation that he be terminated for falsifying sick-leave documents.

On Saturday, August 13, Jenkins called in to report that he was sick, but he did not present a medical excuse the next day. When McNeil asked him for a medical slip, Jenkins replied that he would bring one in later and then left the prison without reporting for roll call. McNeil issued a disciplinary report to Jenkins with a recommended action of three day's suspension for missing work on Sunday, August 14. On August 16, Jenkins resigned.

Pursuant to Title VII of the Civil Rights Act,[1] Jenkins sued the State of Louisiana through the Department of Public Safety and Corrections and officials at Hunt (Whitley, Anderson, and McNeil) for racial and religious discrimination. After a bench trial, the district court held that Jenkins' treatment at Hunt was not racially or religiously motivated.

## II.

■ Under Title VII,[2] an employer engages in an unfair employment practice by discriminating against an employee because of the employee's religious practices or beliefs unless the employer cannot "reasonably accommodate" the employee's needs without "undue hardship" on the employer's business. An employee proves a prima facie case of religious discrimination by showing that the employee: (1) has a bona fide religious belief that conflicts with an employment requirement; (2) informed the employer of this belief; and (3) was disciplined for failure to comply with the conflicting employment requirement.[3]

Once an employee establishes a prima facie case, the burden shifts to the employer to show that it was unable to reasonably accommodate the employee's religious needs without undue hardship.[4]

■ The State concedes that Jenkins has a bona fide religious belief. The district court found, however, that "the defendant's justification for firing Jenkins was complete before he effected notice of his need for religious accommodation" and that "even a finding of constructive discharge under the facts of this case would not relieve the plaintiff from proving the final element of his prima facie case, i.e., that he was disciplined for failing to report to work on Saturdays." Both of these statements are correct. It does not follow, however, that because the prison officials had cause to discharge him for making false reports that they did so for this reason. An employer may not use an employ-

---

1. 42 U.S.C. § 2000e.

2. 42 U.S.C. § 2000e(j).

3. *Turpen v. Missouri–Kansas–Texas R.R. Co.,* 736 F.2d 1022, 1026 (5th Cir.1984).

4. *Id.*

ee's conduct in other respects as a pretext for the discrimination prohibited by Title VII.[5] The issue then is whether Jenkins bore his burden of proving that the real reason for the threatened disciplinary action was not his failure to report on Saturday, but his prior misconduct.

■■■ A constructive discharge occurs when an employer "deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation."[6] Jenkins contends that he was in fact disciplined for failing to work on Saturdays, and that imposing this discipline constituted a constructive discharge. The defendants argue that Jenkins resigned voluntarily after they recommended that he be terminated for falsifying medical excuses. If the officials' account of the final conference with Jenkins on Friday, August 12, is correct and they did not issue an ultimatum for him to work the following day or be fired, then Jenkins was not constructively discharged. If Jenkins' version is correct, however, and the officials did state this condition, then they may indeed have forced him to resign, and hence discharged him in effect.

While the trial judge did not expressly resolve this factual issue, it is evident from the opinion that found that the prison officials did not act because of Johnson's failure to report on Saturday. The opinion states: "The court finds that the defendants disciplined the plaintiff for falsifying his medical excuse slips rather than for failing to comply with his Saturday work schedule." Implicit in this statement is the finding that the officials did not constructively discharge Jenkins because his religious beliefs forbade him to work on the Sabbath. While the district court should have stated explicitly whose version of the events it credited, we are satisfied that no useful purpose would be served by remanding the case to the district court to make such an express finding. The district court held that Jenkins was not disciplined for failing to comply with an employment requirement that conflicted with his religious beliefs and we do not find this holding to be clearly erroneous.

Because Jenkins has not established a case of religious discrimination, we need not decide whether the prison officials could reasonably have accommodated his religious needs.

■ On appeal, Jenkins contends that his claim has been "enlarged to encompass" a claim of unlawful retaliation for discharging him for "engaging in protected activities." This claim was not raised in the district court and is not properly raised before us for the first time. In any event, it lacks merit, for Jenkins was not discharged, actually or constructively.

## III.

■ Jenkins contends that the district court was clearly erroneous in finding that he did not prove his claims of racial discrimination and discriminatory discharge. Jenkins alleges that he was treated invidiously on account of his race because he received a reprimand for returning late from lunch while white employees were not reprimanded for similar offenses. Several white employees testified that they were given reprimands for offenses such as delivering a prisoner to the wrong dormitory, however, and Jenkins did not prove that his offense was somehow less deserving of punishment. Our review of the record reveals that the district court was not clearly erroneous in finding that the white officers were not treated differently and that Jenkins did not prove a claim of disparate treatment.

■ As for Jenkins' transfer to the "B" team, the district court found "simply no evidence of racial discrimination." In keeping with his original plan of maintaining teams of one white and one black officer, Anderson replaced Jenkins with a black officer. Furthermore, Jenkins testified

5. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973).

6. Junior v. Texaco, Inc., 688 F.2d 377, 379 (5th Cir.1982) (quoting Young v. Southwestern Sav. and Loan Ass'n, 509 F.2d 140, 144 (5th Cir. 1975)).

that he had openly disagreed with Anderson's policy regarding inmate discipline. From this the court could conclude that Anderson transferred Jenkins because he "did not fit in" and that this action was not racially motivated.

In a discriminatory discharge suit, once an employer has articulated a legitimate business reason for its employment decision, the burden is on the plaintiff to prove that the employer's reasons for the discharge were pretextual, i.e. that race was a "but for" cause or determining factor in the discharge.[7] Jenkins claims that his discharge for falsifying medical excuses, a legitimate business reason, was a pretext for racial discrimination because a white officer in his position would not have been forced to resign. Because Jenkins was not constructively discharged, the only remaining issue is whether the recommendation for his termination was racially motivated. Jenkins presented testimony that white officers were reprimanded rather than discharged for breaking various rules, including transferring a prisoner to the wrong dormitory, striking an inmate, and failing to deliver a prisoner to a designated area. The prison oficials were not obliged to consider these infractions as serious as falsifying sickness reports. Jenkins provided no evidence that others had been guilty of this particular offense or, consequently, that they had been treated differently. The court was not clearly erroneous, therefore, in finding that there was no evidence that white officers who falsified records were not recommended for termination, or that a white officer in Jenkins' situation would have been treated differently. The district court concluded that Jenkins' race was not a determining factor in his discharge, and, therefore, that he did not prove that the recommendation for his termination was a pretext for racial discrimination. This is supported by the record.

For the foregoing reasons the judgment is AFFIRMED.

---

7. *Jackson v. City of Killeen,* 654 F.2d 1181, 1186 (5th Cir.1981).