Cleveland ELLISON, Plaintiff,

v.

DARDEN RESTAURANTS, INC., d/b/a
Red Lobster Restaurants,
Defendant.

No. Civ.A. 3:96–cv–805WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

March 18, 1999.

748

Dalton McBee, Jr., Dalton McBee, Jr., Attorney, Jackson, MS, for Cleveland Ellison, plaintiff.

Herbert C. Ehrhardt, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, Charles V. Holmes, McKnight, Hudson, Ford & Harrison, LLP, Memphis, TN, Mary Jane Palmer, Lewis, Fisher, Henderson & Claxton, Memphis, TN, for Darden Restaurants, Inc. dba Red Lobster Restaurants, defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the defendant's Motion for Summary Judgment, filed pursuant to Rules 56(b) [1] and (c) [2] of the Federal Rules of Civil Procedure. The complaint in this action alleges that the plaintiff, Cleveland Ellison, was discriminatorily discharged because of his African–American race by the defendant, GRMI, Inc., d/b/a Red Lobster Restaurants ("Red Lobster"), misnamed in the complaint as Darden Restaurants, Inc., d/b/a Red Lobster Restaurants. The complaint, alleging a violation of Title 42 U.S.C. § 1981,[3] also asserts, a failure-to-promote claim. This court has jurisdiction over this lawsuit pursuant to Title 28 U.S.C. § 1331.[4] Defendant Red Lobster argues in its motion that under the undisputed material facts and applicable law it is entitled to a judgment because

---

1. Rule 56(b) of the Federal Rules of Civil Procedure provides:

   (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

2. Rule 56(c) provides in pertinent part:

   The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

3. Title 42 U.S.C. § 1981(a) provides in pertinent part that, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

4. Title 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

plaintiff has not established a prima facie case on either of his two claims. Although plaintiff opposes the motion, this court is persuaded to grant it.

## BACKGROUND

Cleveland Ellison, a former assistant manager at the defendant's Jackson, Mississippi, restaurant, was terminated from his employment after the general manager of the restaurant, Morris Causey, discovered that another employee's time card, that of Peggy Moran, had been altered to reflect inaccurately the number of hours worked by Peggy Moran. Because Ellison and Causey were the only managers on duty when the alteration occurred, and since a manager's key was necessary to make such an alteration, Causey suspected that Ellison was responsible for the alteration. At the direction of Gary Moore, the Director of Operations (and Causey's immediate supervisor), Causey conducted an investigation which included questioning numerous employees, several of whom informed him that on previous occasions Ellison had altered their timecards or forced them to perform work while "off the clock." As a result of this investigation, Ellison's employment was terminated.

Ellison now seeks to establish that he was not promoted and was terminated on the basis of his race (black/African American) in violation of Title 42 U.S.C. § 1981.[5] Pointing to his years with the defendant and all the while proclaiming his innocence of the accused actions, plaintiff says the discharge was racially motivated and, further, that he should have been promoted earlier to general manager, but was not on account of his race. Defendant has responded with its motion for summary judgment, arguing that under the undisputed material facts and the applicable law it is entitled to a grant of summary judgment. Although plaintiff argues against defendant's motion, this court is persuaded to grant it.

5. See footnote 3.

## I. *THE STANDARD FOR SUMMARY JUDGMENT*

In *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court summarized the standard for summary judgment, noting that a party who bears the burden of proof on a particular issue must affirmatively demonstrate by specific factual evidence that there are no genuine issues of material fact which require trial. The Court held that Rule 56 mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), the Supreme Court set forth the burden which lies with the non-moving party to show that a genuine issue of material fact exists by presenting "affirmative evidence" in support of his claims:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. 2505.

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material and must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Id.* at 248, 106 S.Ct. 2505. Moreover, in order to withstand a motion for summary judgment, a plaintiff cannot rely upon speculation, but must go beyond the pleadings and present specific facts on each element of his case showing that there is a genuine issue of fact. In *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Supreme Court stated that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' "

*Id.* at 587, 106 S.Ct. 1348 (citation omitted).

## II. *PLAINTIFF IS UNABLE TO ESTABLISH THAT HIS TERMINATION WAS BASED ON HIS RACE*

Plaintiff's action is brought pursuant to Title 42 U.S.C. § 1981, which prohibits discrimination on the basis of race. The allocation and order of proof in a § 1981 case follows the burden-shifting scheme that the United States Supreme Court first articulated under Title VII of the Civil Rights Act of 1964 in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996).

Under this burden-shifting scheme, plaintiff bears the burden of proof in first establishing by a preponderance of the evidence a *prima facie* case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If plaintiff establishes a *prima facie* case of discrimination, the burden of production, but not the burden of persuasion, shifts to defendant to articulate a reason which, if taken as true, provides a legitimate, non-discriminatory basis for its actions. *Burdine*, 450 U.S. at 256–57, 101 S.Ct. 1089; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *LaPierre*, 86 F.3d at 449. The burden of proof, that is, the burden of persuasion, remains at all times on plaintiff to establish that he was the victim of unlawful discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Once defendant comes forward with a non-discriminatory reason for its actions, plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation and from which the jury may find that the employer's reason was a mere pretext for discrimination. *Burdine*, 450 U.S. at 252–58, 101 S.Ct. 1089.

■ In order to establish a *prima facie* case of discrimination, plaintiff must establish all of the following elements: (1) that he was discharged; (2) that he was qualified for the position; (3) that he is a member of a protected class; and (4) that he was replaced by someone outside of his protected class, or that "white employees were treated differently under circumstances 'nearly identical' to his." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir.1995), citing *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (other citation omitted); *see also Parikh v. United Artists Theatre Circuit, Inc.*, 934 F.Supp. 760, 765 (S.D.Miss.1996) ("[W]hen relying on comparisons to prove discrimination, plaintiff has the burden to establish that he was discharged for misconduct that was 'nearly identical' to that engaged in by a non-minority who was retained").

In the present case, plaintiff has not established a *prima facie* case of discrimination. The material undisputed facts germane to this conclusion are set out below.

On the evening of September 9, 1996, Ellison was the closing manager and Causey was the mid-day manager, which meant that they were the only two managers on duty that night. At various times during that evening, Causey and Ellison printed hourly labor reports to ensure the restaurant was not running an excessive number of labor hours. Although the 9:00 p.m. labor hour report indicated the store was running at about "even" on labor hours, when Causey ran a report around 11:00 p.m., the store was "plus twelve" labor hours. (Ellison Depo. at 158; Causey Depo. at 68–69, 72–73). Given the discrepancy between the 9:00 p.m. and 11:00 p.m. reports, Causey ran an Active Timecards Report which demonstrated the amount of time worked by each employee that day. The report showed Peggy Mor-

an, a bartender, as having clocked in at 10:00 a.m. and out at 10:26 a.m. (Causey Depo. at 75 and Ex. 2 thereto; Ellison Depo. at 166).

Moran's timecard contained the code "OI," indicating that a manager had manually entered Moran's clock-out time. (Ellison Depo. at 175; Causey Depo. at 79). A non-managerial employee is generally unable to manually change the time entered on a time card. (Ellison Depo. at 177). The "OI" code does not mean that the manager actually clocked the employee out at the time indicated; the entry clocking Moran out at 10:26 a.m. could have been made by a manager at any time. (Causey Depo. at 84).

On the following day, September 10, Causey asked Moran if she had clocked out at 10:26 a.m. Moran told Causey that she had clocked out at the bar terminal and left the restaurant somewhere between 10:30 p.m. and 10:45 p.m. on the evening of September 9. (Causey Depo. at 78, 82). Ellison was working with Moran on the evening of September 9 and admits that she actually worked well past 10:00 p.m. (Ellison Depo. at 167). Because of the circumstances, Causey suspected that Ellison may have been responsible for the entry on Moran's timecard clocking her out at 10:26 a.m. (Causey Depo. at 85, 91). Thereafter, Causey contacted his immediate supervisor, Gary Moore, and informed him of his concerns. (Causey Depo. at 87). Moore instructed Causey to suspend plaintiff pending an investigation and to contact the Company's Employee Relations Department. He also instructed Causey to question other employees to determine if any other timecards had been altered. (Moore Depo. at 52).

On the following day, September 10, Causey spoke with other employees in the restaurant who informed him that the plaintiff, on previous occasions, either had altered their timecards to reflect the inaccurate number of hours worked, or had required them to work off the clock. (Causey Depo. at 93–99). The oral reports to Causey, later confirmed in writing by employees Robert Johnson (white) and John Patterson (black), suggest that Ellison had altered employee timecards in order to "save on labor." As reported by Patterson, if asked to make up the time later, Ellison would retaliate by cutting the employee's scheduled hours. (Causey Depo. at 95, 96, 98 and Exs. 4 and 5 thereto).

Moore and Causey met with Ellison on September 11 and discussed the matter with him. Although Ellison denied altering timecards, Moore and Causey believed that he had done so, and they advised Ellison of the termination of his employment.

The termination of a manager for the unlawful alteration of employee timecards may constitute a legitimate, nondiscriminatory reason. Indeed, such conduct could amount to a violation of the wage and hour laws under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*[6] The courts in similar circumstances have upheld discharges, finding that such reasons constitute a legitimate, non-discriminatory basis. *See Lee v. Georgia–Pacific Corp.*, 944 F.Supp. 497 (S.D.Miss.1996) (employer met its burden of production by establishing that it discharged employee upon discovery that he had falsely represented his qualifications for the job); *Jenkins v. Louisiana*, 874 F.2d 992 (5th Cir.1989) (dis-

---

**6.** Section 206(a) of Title 29 provides in pertinent part:

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

(1) except as otherwise provided in this section, not less than $4.25 an hour during the period ending on September 30, 1996, not less than $4.75 an hour during the year beginning on October 1, 1996, and not less than $5.15 an hour beginning September 1, 1997. . . .

charge for falsification of medical excuses constitutes legitimate, non-discriminatory reason for termination); *see also, e.g., Young v. City of Houston,* 906 F.2d 177 (5th Cir.1990) (employer offered legitimate, non-discriminatory reason for termination by establishing that the employee was often gone from the office, slept at his desk, violated office procedures and ignored the requests of his supervisors).

Once defendant has articulated a non-discriminatory reason for its actions, plaintiff "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation" and from which the jury may find that the employer's reason was mere pretext for discrimination. *Burdine,* 450 U.S. at 256–57, 101 S.Ct. 1089. At this stage of the analysis, plaintiff must do more than merely cast doubt on the employer's stated reason for termination or attempt to restate his *prima facie* case. To allow the fact-finder simply to refuse to believe the employer's explanation in the absence of any evidence would impermissibly shift the burden of persuasion from plaintiff to defendant. *See, e.g., Walton v. Bisco Indus. Inc.,* 119 F.3d 368, 372 (5th Cir.1997). Plaintiff at all times retains the ultimate burden of persuasion that defendant's proffered non-discriminatory reasons are false and that defendant's actions were actually taken for discriminatory reasons. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("a reason cannot be proved to be a 'pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason").

■ In this case, much of the plaintiff's attack is focused on whether defendant can prove that he actually altered Moran's timecard. This attack, however, misses the mark. The focus of this court's eye is on discrimination. The Fifth Circuit has made clear that the relevant inquiry is whether the employer believed the allegation in good faith and whether the discharge decision was based on that belief. *Waggoner v. City of Garland, Texas,* 987

F.2d 1160, 1165 (5th Cir.1993). The well-developed and consistently-applied law in this Circuit is that employment discrimination laws do not exist to protect against unfair or incorrect business decisions by employers; the laws forbid only those decisions which are based on unlawful animus. *Turner v. Texas Instr., Inc.,* 555 F.2d 1251, 1256–57 (5th Cir.1977), *rev'd on other grounds,* 647 F.2d 513 (5th Cir.1981). *See also Risher v. Aldridge,* 889 F.2d 592, 598 (5th Cir.1989) ("[T]he ultimate issue is not whether [the employer] made the decision [the court] would have made had we been in his place, nor even whether [the employer] made a sound decision"). The Court does not sit as an all-knowing "personnel manager" to review a company's employment decisions. *Parikh,* 934 F.Supp. at 768.

■ In the present case, plaintiff has failed to present any proof that Red Lobster's offered reason for discharging plaintiff, namely that it was based on the good faith belief of both Causey and Moore that plaintiff had unlawfully altered an employee's timecard, was pretextual. Ellison himself testified that in the meeting with Moore, Moore made a statement to the effect that "deep down in [Moore's] heart" he believed plaintiff had made the alteration. Ellison also testified that he believed that he was "being terminated because [Causey and Moore] believed that [he] altered an employee's timecard." (Ellison Depo. at 207–08). Further, there is probative evidence supporting Causey and Moore's belief that Ellison was the guilty party: he was the only manager in the restaurant other than Causey; only with a manager's key could such alterations be made; and other employees—both black and white—stated that Ellison had engaged in similar conduct in the past. Even if Red Lobster was incorrect in its determination that Ellison unlawfully had altered employee timecards, its good faith belief that he did so presents a legitimate, non-discriminatory reason which plaintiff must show to be pretextual in order to

overcome summary judgment. *Little v. Republic Refining Co., Ltd.,* 924 F.2d 93, 97 (5th Cir.1991) (even an incorrect belief on the part of the employer constitutes a legitimate non-discriminatory reason).

▇ Plaintiff simply has failed to establish that defendant's reasons were either false or a disguise for discrimination. Initially, when confronted by Causey and Moore regarding Moran's timecard, plaintiff offered no explanation as to how the timecard could have been changed, other than his belief that Moran possessed a manager's key. (Ellison Depo. at 175, 177, 168–69; Causey Depo. at 60–61, 79, 84). Further, Ellison admits that the penalty for falsification of company documents is immediate termination of employment. (Ellison Depo. at 179; Moore Depo. at 70). Ellison cannot refute the fact that white managers have been terminated for similar conduct. In fact, Ellison recalls being told by Moore that he had terminated other managers for similar offenses. (Ellison Depo. at 157). *See Walton,* 119 F.3d at 368 (summary judgment is appropriate when the plaintiff cannot contest the employer's evidence that it had fired other similarly situated employees for the same reason the plaintiff was fired).

When questioned at his deposition regarding the basis for his belief that his termination was somehow discriminatory, Ellison offered nothing more than his own subjective beliefs, unsupported by any record evidence, that his firing must have been illegal. Such unsupported and conclusory allegations are insufficient to overcome a properly supported summary judgment motion. *Walton,* 119 F.3d at 370–72; *see also Hornsby v. Conoco, Inc.,* 777 F.2d 243, 246 (5th Cir.1985); *Elliott v. Group Med. & Surg. Serv.,* 714 F.2d 556, 567 (5th Cir.1983).

The following testimony from plaintiff's deposition is instructive in this regard:

Q: And what is the basis of your belief that you were terminated because of your race?

A. It is just all of the little things leading up to this, to this point is my belief that it had to be race. It couldn't be performance. If I am going to say—it just couldn't be performance.

Q. Well, it wasn't your understanding that you were being terminated because of your performance, was it? It was your understanding that you were being terminated because it was believed that you altered an employee's timecard.

A. Right. So it is my belief that it was race.

Q. And I am asking you what is the basis of that belief?

A. If it is—because we are back to *they believed I did something devious* when I know personally I didn't. Down in my heart I know this never happened, so if I am the one that's being accused and I know that it didn't happen, then you are not terminating me for my performance, so that means I am doing a good job— my last evaluation showed that— then what is it?

Q. So that's the basis of your belief that your termination was because you are black?

A. Yes.

Q. Because they didn't believe you?

A. No. *Just because I believe it was because I am black.*

Q. I am trying to understand how you came to that conclusion.

A. *Through my beliefs. I believe that I was terminated because I was black.*

(Ellison Depo. at. 207, 208) (emphasis added). This testimony demonstrates not only that plaintiff's claims are based simply on his subjective beliefs, but moreover shows that plaintiff himself was persuaded that Moore and Causey honestly believed that plaintiff had falsified employee timecards.

▇ Plaintiff may disagree with Moore and Causey, but there is no proof

before the court which would lead a reasonable juror to believe that Causey and Moore came to their conclusion regarding Ellison's culpability because of his race. Plaintiff speculated in his charge before the Equal Employment Opportunity Commission ("EEOC")[7] that Causey might have fabricated the alteration in an effort to eliminate plaintiff as a "rival" because plaintiff was a "more mature, stable and reliable employee" than Causey. (Ellison Depo. at 232). Even if plaintiff's allegation were true, such an action by Causey would not constitute prohibited discrimination based on race in violation of Title 42 U.S.C. § 1981. Moreover, such unfounded and subjective beliefs are exactly the type that have been found insufficient to survive summary judgment.

### III. *PLAINTIFF ALSO HAS FAILED TO ESTABLISH DISCRIMINATION IN PROMOTIONS*

In paragraph 7 of his complaint, plaintiff alleges the following:

The Defendant has intentionally engaged in systemic (sic) disparate treatment of members of the black race. Black employees including plaintiff, are promoted at a slower rate and are not selected for promotion to certain executive positions, including the positions of general manager and director, at the same rate as whites.

Thus, plaintiff's complaint also states, in wholly conclusory fashion, that defendant systematically discriminates against black employees, including plaintiff, by promoting them at a slower rate than white employees and by not selecting them for the positions of general manager and director as often as whites. Since plaintiff again has failed to produce evidence to support his allegation, this claim, too, must be dismissed.

In order to state a *prima facie* case of failure to promote, plaintiff must establish the following: (1) that he is a member of a protected class; (2) that he sought and was qualified for an available employment position; (3) that he was rejected for that position; and (4) that defendant continued to seek applicants with plaintiff's qualifications. *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 (5th Cir.1996).

In paragraph 10 of plaintiff's affidavit attached to his response to defendant's motion for summary judgment, Ellison testified as follows:

I have 20 plus years of military experience and a college degree. I feel that I was more qualified than Morris Causey to serve as a general manager. I also feel that Tawanna Anderson (black) was more qualified than Causey. Ms. Anderson was the associate manager when Causey was brought in over her in June, 1996. Ms. Anderson should have been promoted to store manager and I should have been promoted to associate manager. Instead Causey was promoted over both of us, and, as of December, 1997, all the managers but one at the Jackson restaurant were white.

No where in the record does this court find that plaintiff ever applied for the position of general manager or, for that matter, that Tawanna Anderson ever applied. *See Bernard v. Gulf Oil Corp.,* 643 F.Supp. 1494, 1505 (E.D.Tex.1986) (holding that plaintiff's failure to make request for promotion precluded plaintiff from establishing *prima facie* case), *rev'd in part on other grounds,* 841 F.2d 547 (5th Cir.1988); *but cf. Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1134 (11th Cir.1984) (holding that *prima facie* case may be established where employee does not have notice or opportunity to apply for pro-

---

**7.** As a prerequisite before filing a lawsuit alleging a race discrimination claim under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.,* one must first file an administrative complaint with the EEOC. *Dao v. Auchan Hypermarket,* 96 F.3d 787, 789 (1996); *Cruce v. Brazosport Independent School Dist.,* 703

F.2d 862, 863 (5th Cir.1983). This requirement does not apply to lawsuits brought under § 1981. *Hines v. D'Artois,* 531 F.2d 726, 734 (5th Cir.1976); *Alpha Portland Cement Company v. Reese,* 507 F.2d 607, 610 (5th Cir.1975).

motion). Nor does plaintiff set out anywhere the defendant's qualifications for the position. By his affidavit, plaintiff opines that his 20 plus years of military experience and a college degree qualified him for the position; however, he fails to state what qualifications the defendant posted for the position and how plaintiff's qualifications for the position exceeded those of Causey. Plaintiff's claim is simply too bare of essential urgings to escape summary judgment.

Moreover, in his response to defendant's motion for summary judgment, plaintiff made no attempt to close this evidentiary gap separating supposition from the establishment of a prima facie case. Primarily seeking to rebuff the defendant's assertion that plaintiff was clearly the most logical culprit for the timecard falsification, plaintiff had only the following to say about his promotion claim in his Memorandum in Opposition to Defendant's Motion for Summary Judgment:

> Mr. Ellison also asserts that there has only been one black general manager in this three state division. Mr. Ellison has asserted a promotion claim in addition to his discharge claim. He believes that a motivating factor in his discharge was to deny him a promotion to general manager, a position for which he is well qualified. As explained in his affidavit, Plaintiff asserts that Causey was less qualified than both Ms. Simmons and Plaintiff, who were the Associate Manager and Assistant Manager, respectively when Causey was promoted over them to General Manager of the Jackson restaurant.

Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, p. 10.

Plaintiff's argument here seems to tie together plaintiff's discharge claim and promotion claim, suggesting that the discharge was simply a ploy to rob plaintiff of an earned promotion. Yet, even this version of plaintiff's claim is unadorned by any proof. To his response to defendant's motion for summary judgment, the plaintiff attached his affidavit; excerpts from the deposition of Morris Causey; excerpts from his deposition; defendant's answers to various interrogatories; and copies of timecards. This court, although not invited to do so by plaintiff who made no cites to any of these exhibits relative to his non-promotion claim, has reviewed all of these exhibits and finds nothing within them to support plaintiff's non-promotion claims.

Next, Ellison attempts to establish discrimination by asserting that there were only two black managers in what he thinks is a twelve-restaurant division and claiming that "[he is] pretty sure that there were more qualified people than two." (Ellison Depo. at 219). Clearly, such statistics fall short of establishing discrimination. Initially, any statistical analysis by plaintiff is inappropriate in the absence of an analysis of the appropriate applicant pool and consideration of the number of employees who would be qualified for the positions in question. *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1285 (5th Cir.1994). Moreover, plaintiff completely ignored one highly relevant statistic in the record, the number of blacks promoted by Moore, who was the decision-maker. That statistic reflects that half of the persons Moore promoted to general manager are black (3 out of 6). (Moore Depo. at 77, 78).

In sum, plaintiff has produced nothing in support of his claim of discriminatory failure to promote, other than his subjective belief that defendant must have discriminated against him on the basis of his race. Again, such allegations are insufficient to overcome a properly-supported motion for summary judgment.

For the foregoing reasons, this court concludes that this lawsuit features no genuine issues of material fact requiring a trial. Since the applicable law favors defendant's motion, this court is persuaded that defendant is entitled as a matter of law to summary judgment and dismissal of plaintiff's complaint in its entirety with prejudice.

IT IS, THEREFORE, ORDERED AND ADJUDGED that defendant's Motion for Summary Judgment be granted against all of plaintiff's claims and that these claims be dismissed with prejudice, costs being awarded to defendant. A separate judgment shall be entered in accordance with the Local Rules.