IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-10668

Summary Calendar
_____

WILLIE J MCKINNEY,

Plaintiff-Appellant,

versus

TEXAS DEPARTMENT OF TRANSPORTATION

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
(99-CV-1009)

_____

December 6, 2001

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

 Willie McKinney appeals the district court's grant of summary judgment in favor of the defendant, the Texas Department of Transportation ("TxDOT"), on his claim of Title VII employment discrimination.  For the following reasons, we AFFIRM.

_____

 [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

McKinney was an at-will employee of TxDOT from 1986 until his termination (the subject of this lawsuit) in 1998. He worked as a maintenance technician in TxDOT's Abilene District; and at the time of his termination he was employed in Jones County. In September, 1998, TxDOT terminated McKinney after an incident in which he appeared to threaten the Interim District Engineer of the Abilene District, Lauren Garduno. Prior to this event, McKinney had been placed on probation following two violations of TxDOT policy.

First, in May, 1998, TxDOT placed McKinney on probation for one year after McKinney allegedly became aggressive towards a gas station attendant during a fuel purchase for TxDOT. The attendant, on his own initiative, wrote TxDOT to complain about McKinney's unruly behavior. TxDOT conducted an investigation into the events and determined that McKinney had violated TxDOT policy. McKinney was thus placed on probation for one year, in part because of a previous record of insubordination.

In September, 1998, just before his termination, McKinney was asked to provide a home telephone number to TxDOT, so that he could be contacted in an emergency. McKinney initially refused to provide a telephone number, despite a direct request by his supervisor to do so. This insubordination prompted Garduno to extend McKinney's probationary period approximately 4 months, so that it would end in September, 1999.

On September 23, 1998, Garduno met with McKinney to inform him of the extension of his probation.  During this meeting, McKinney uttered something to the effect of "You will not prosper by messing with me."[1]  Garduno, and several other employees present at the meeting concluded that McKinney had threatened Garduno, based upon both this statement and his body language and prior conduct.  Garduno, pursuant to TxDOT's policies on violence in the workplace, decided that McKinney should be terminated.  McKinney was terminated on September 28, 2001.

McKinney brought this suit, alleging that he was terminated because of his race (he is African-American) in violation of Title VII of the Civil Rights Act of 1964.[2]  The district court granted summary judgment to TxDOT on the Title VII claim, and McKinney now appeals.

## II

### A

We review the district court's grant of summary judgment *de novo*.[3]  We apply the same standards as the district court, and view all disputed facts "in the light most favorable to the nonmoving

---

[1] The parties dispute the precise words used by McKinney.  McKinney claims that he quoted the Bible by stating "No weapon formed against me shall prosper." *Isiah* 54:17 (New International Version).

[2] 42 U.S.C. § 2000e *et seq.*

[3] *Starkman v. Evans*, 198 F.3d 173, 174 (5th Cir. 1999).

party ...."[4]  We will grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[5]  The nonmoving party, in order to survive summary judgment, must "go beyond the pleadings and by [their] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."[6]

In the absence of direct evidence of discriminatory intent,[7] we analyze the plaintiff's claim under the burden-shifting framework established by the Supreme Court in *McDonnell-Douglas Corp. v. Green*.[8]  Under *McDonnell-Douglas*, a plaintiff must first establish a *prima facie* case of discrimination.  This shifts the burden of production to the employer to provide a legitimate, non-discriminatory reason for its actions.[9]  "If the plaintiff can show that the proffered justification is mere pretext, however, that showing, coupled with the *prima facie* case, will be sufficient in

---

[4] *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995).

[5] Fed R. Civ. P. 56(c).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation omitted).

[7] McKinney does offer what he alleges is direct evidence, but we reject it under our stray remarks jurisprudence.  *See* infra n.15.

[8] 411 U.S. 792, 802 (1973).

[9] *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).

4

most cases to survive summary judgment."[10]  "This court has consistently held that an employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief."[11]


B

In this case, TxDOT has conceded that McKinney established his *prima facie* case.  TxDOT argues, and the district court agreed, that McKinney failed to produce substantial evidence that TxDOT's proffered justification for McKinney's termination: his disciplinary problems and threatening actions toward Garduno, was a mere pretext for racial discrimination.

McKinney's response consists of two arguments.  First, he offers differing accounts of all three relevant incidents (the confrontation with the gas station attendant, the refusal to provide a home telephone number, and the threat against Garduno).  Second, he complains that racial epithets were employed at the workplace, which shows that the disciplinary justification offered by TxDOT is pretext.

With respect to his alternate factual accounts of events, McKinney has not rebutted the legitimate nondiscriminatory

---

[10] *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-48 (2000)).

[11] *Id.* at 402-03.

5

justification for his termination by providing these alternate versions.

First, McKinney's assertion that the gas station attendant "became ugly" with him, as opposed to the confrontation's being initiated by McKinney, does not speak to the motive of Garduno in imposing probation upon McKinney for the incident. McKinney cannot show pretext by claiming "innocence" without offering evidence that TxDOT knew or had reason to know that he did not merit punishment for the gas station incident but punished him anyway---for only this would provide evidence that the stated reason for his probation, and his ultimate termination, was pretextual. McKinney has offered no such evidence, and the facts of the incident (involving an unsolicited complaint from a private citizen), do not lend itself to any invidious motive on the part of TxDOT in imposing probation.

Second, McKinney does not attempt to rebut evidence that he directly refused to obey a supervisor when he was asked to provide a telephone number. Instead, McKinney notes that he did eventually provide such a number. However, the disciplinary action in this case (an extension of probation) was imposed for insubordination, not for failing to provide the telephone number.[12]

---

[12] *See Chaney v. New Orleans Public Facility Mgmt., Inc.*, 179 F.3d 164, 167-68 (5th Cir. 1999) ("The failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee.").

Finally, McKinney claims that he did not threaten Garduno, but instead prayed by quoting the Bible. As with the other alternate versions of the facts, McKinney has not provided substantial evidence that the legitimate non-discriminatory justification (that Garduno and three eyewitnesses interpreted McKinney's actions as threatening) offered by TxDOT lacks credibility.

"In determining whether summary judgment was appropriate, we consider 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.'"[13] "[McKinney's] evidence to rebut the non-discriminatory reasons offered by [TxDOT] is not so persuasive so as to support an inference that the real reason was discrimination."[14] As a result, summary judgment is appropriate unless McKinney's evidence that racially derogatory remarks were used at the workplace provides either sufficient evidence of pretext or direct evidence of discriminatory intent. We now turn to those questions.

---

[13] *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (quoting *Reeves*, 530 U.S. at 147).

[14] *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 904 (5th Cir. 2000) (quoting *Rubinstein v. Administrators of the Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000)).

McKinney also alleges that the general use of racial epithets in the workplace and the inaction of a supervisor in light of such activity provide evidence of pretext. However, McKinney has adduced no evidence that anyone even remotely connected with the decision to terminate or discipline him ever made such remarks. Even after *Reeves* we have held that such remarks do not create a jury issue as to pretext unless the *speaker* is someone "principally responsible" for the employee's termination or has leverage over someone responsible for that decision.[15]

McKinney argues that since Gary Teichelman was present when some of these remarks were allegedly made, and he was involved in the decision to terminate McKinney, that this is sufficient to impute those remarks to Teichelman and provide evidence of pretext. McKinney has presented no evidence that Teichelman had supervisory authority over the individuals making the racially-derogatory remarks and therefore the authority to take action. Consequentially, Tiechelman's inaction in the face of these remarks cannot provide evidence of pretext.

---

[15] *Id.* at 379-80. McKinney also apparently uses these remarks as evidence of direct discrimination. Where, as here, there is not substantial evidence of pretext, we have held that it is appropriate to analyze such stray remarks as direct evidence of discrimination under *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996). Under *Brown* such remarks, in order to provide direct evidence, must (among other things) be "made by an individual with authority over the employment decision at issue ...." *Id.* at 655; *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999). Again, McKinney does not allege that the remarks were made by decision-makers. Therefore they cannot provide direct evidence of discrimination sufficient to withstand summary judgment.

Finally, McKinney's reliance on *Evans v. Bishop*[16] is misplaced, because in that case the individual who uttered the derogatory remark was, in fact, an actual decision-maker.[17]

### III

McKinney, for the first time on appeal, raises claims of retaliation and hostile work environment. Since these claims were not raised in the district court, they cannot be entertained now.[18] McKinney has conflated our standard for determining whether a Title VII plaintiff's claims, *properly raised in the district court*, were within the scope of the EEOC charge, such that the district court had jurisdiction to hear them.[19] This rule is not implicated when there has been a complete failure to raise such a claim in the district court in the first instance.

AFFIRMED.

---

[16] 238 F.3d 586 (5th Cir. 2000)

[17] *Id*. at 588.

[18] *Jenkins v. State of La., Through Dep't of Corrections*, 874 F.2d 992, 996 (5th Cir. 1989).

[19] *See, e.g., Thomas v. Texas Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000) ("The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.").